**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 1342

JAYMI KATHERINE DENNIES

VERSUS

ALEX ROBLES

*DATE OF JUDGMENT:* AUG 0 8 2023

ON APPEAL FROM THE CITY COURT OF HAMMOND
PARISH OF TANGIPAHOA, STATE OF LOUISIANA
NUMBER 2022E01835

HONORABLE C. BRITAIN SLEDGE, III JUDGE

* * * * * *

| | |
|---|---|
| Jaymi Katherine Dennies<br>Hammond, Louisiana | Plaintiff-Appellee<br>In Proper Person |
| Alex Robles<br>Hammond, Louisiana | Defendant-Appellant<br>In Proper Person |

* * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Disposition: AFFIRMED.

**Chutz, J.**

Defendant-appellant, Alex Robles, appeals a judgment of eviction rendered against him by the City Court of Hammond in favor of plaintiff-appellee, Jaymi K. Dennies. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

For a period of time, Ms. Dennies and Mr. Robles resided together at a house on Sontheimer Road owned by Ms. Dennies. On October 11, 2022, Ms. Dennies posted written notice for Mr. Robles to vacate the premises on the grounds of stalking and invasion of privacy. Ms. Dennies subsequently gave Mr. Robles a second written notice to vacate. On October 19, 2022, Ms. Dennies filed a motion and rule for possession in the City Court of Hammond after Mr. Robles failed to vacate the premises.

In answer, Mr. Robles asserted Ms. Dennies could not establish stalking and invasion of privacy as grounds for eviction because they were a longtime romantic couple, and Ms. Dennies had given him permission to look through her cell phone. Mr. Robles further alleged he had a partial ownership interest in the house because he made some mortgage payments on the house, including the one due for October 2022, and he had also performed substantial repairs on the house. Mr. Robles claimed Ms. Dennies' attempt to evict him was retaliation for him confronting her about an affair he alleged she had with another man and was "part of a [pattern of] behavior of Domestic Abuse that she has demonstrated over the years."

A hearing was held on Ms. Dennies' rule for possession on October 25, 2022. Ms. Dennies testified she purchased the house on Sontheimer Road in October 2020, and Mr. Robles moved into the house as her roommate shortly thereafter. She indicated they had a verbal agreement that he would pay her $500.00 in rent per month. According to Ms. Dennies, she bought the house with money she inherited from her grandparents. She denied there was ever any discussion with Mr. Robles

2

about the two of them buying the house jointly. Ms. Dennies further denied Mr. Robles' contention that he was her boyfriend. She testified Mr. Robles invaded her privacy by going through her mail, her cell phone, and her watch, making her feel uneasy and unsafe in her own home. She testified Mr. Robles had recently opened her cell phone in the middle of the night while she was sleeping and texted several photographs and a video from her cell phone to his cell phone.

Mr. Robles testified at the hearing that he is still involved in a romantic relationship with Ms. Dennies, while at the same time alleging she was involved in a plot to kill him. He also reiterated his claim that Ms. Dennies gave him permission to look through her cell phone in July 2019. At another point in his testimony, however, he denied ever looking through her cell phone but admitted "looking through her watch." Mr. Robles additionally claimed that after posting the October 11 notice to vacate, Ms. Dennies later agreed he could remain in the house until the end of the year.

As support for this claim, Mr. Robles requested the trial court allow him to play an audio recording from his cell phone of an October 12, 2022 conversation during which Ms. Dennies allegedly made this statement. While the trial court permitted him to play the recording in court, Mr. Robles did not introduce the recording into evidence, and it is not included in the appellate record. After the recording was played, Ms. Dennies denied she told Mr. Robles he could remain in the house until the end of the year. She explained the recorded conversation occurred on October 12, and she later gave Mr. Robles another written notice to vacate by the end of the week.

After hearing the testimony of both parties, the trial court observed they had "a complicated personal relationship." The trial court further concluded the parties had a "month to month ... verbal lease" and a "verbal agreement of what the living arrangements would be and the compensation [Mr. Robles] would provide, whether

3

it be payments to the mortgage, cleaning up around the house, fixing stuff – whatever." Finding Ms. Dennies had given Mr. Robles a second notice to vacate after she allegedly told him he could remain in the house through the end of the year, the trial court held Mr. Robles must vacate the premises by the end of the month. On October 25, 2022, the trial court signed a judgment of eviction in favor of Ms. Dennies ordering Mr. Robles to vacate the premises no later than the end of the month. Mr. Robles now appeals.

## DISCUSSION

Eviction is a proper remedy for an owner of immovable property who wishes to evict a lessee[1] after his right of occupancy has ceased. La. C.C.P. art. 4701; *Polk v. Buckhalter*, 18-0053 (La. App. 1st Cir. 9/24/18), 258 So.3d 816, 818-19. A summary action for eviction involves the single issue of whether the owner is entitled to possession of the premises. *Citizens Bank & Trust Company v. Carr*, 583 So.2d 864, 866 (La. App. 1st Cir.), writ denied, 588 So.2d 109 (La. 1991). The summary eviction procedure is not appropriate to try disputed title to property but is designed for situations where the possessor has no semblance of claim to title or possession. *Polk*, 258 So.3d at 819; see also La. Code Civ. P. art. 4705.

Although Mr. Robles admits in brief that Ms. Dennies retains title to the house on Sontheimer Road, he alleged both in the trial court and in this court that he has a partial ownership interest in the house. His claim is based on his contention that he

---

[1] In brief, Mr. Robles argues that in order to evict him, Ms. Dennies was required to prove he was an "occupant" of the house as defined in La. C.C.P. art. 4704, and the purpose of the occupancy had ceased. In pertinent part, La. C.C.P. art. 4704 defines an "occupant" as including "any person occupying immovable property by permission or accommodation of the owner." Mr. Robles maintains a rule to evict a tenant may be subject to an exception of no cause of cause if the defendant is an occupant of the premises, and he raised the exception of no cause of action as an affirmative defense in his answer. These arguments lack merit. The owner of immovable property has a right/cause of action to evict either a lessee or an occupant of his property when the lessee or occupant's right of occupancy has ceased and proper written notice to vacate has been given. See La. C.C.P. arts. 4701, 4702, and 4731. In this case, the trial court concluded there was a verbal lease between Ms. Dennies and Mr. Robles, making him a lessee. Given the trial court apparent acceptance of Ms. Dennies' testimony, we cannot say the trial court's conclusion that a verbal lease existed was manifestly erroneous.

4

made some mortgage payments on the house and also performed substantial repairs on it. City courts lack jurisdiction over eviction proceedings where title to immovable property is in dispute. La. C.C.P. art. 4847(A)(1); *Bon Amis Investments, LLC v. Lapeyrouse*, 15-1459 (La. App. 1 Cir. 5/5/16), 195 So.3d 514, 517; see also La. C.C.P. art. 4705. Nevertheless, a lessee cannot defeat the owner's right to a summary action for eviction merely by asserting an ownership interest in immovable property when the record is devoid of any evidence indicating the existence of a colorable dispute concerning title to the property or even a semblance of title in the lessee. See *Citizens Bank & Trust Company*, 583 So.2d at 866; see also *Bon Amis Investments, LLC*, 195 So.3d at 517.

The record herein is devoid of any evidence supporting Mr. Robles' ownership claim. He does not claim that he and Ms. Dennies had an agreement for him to purchase any interest in the house. Moreover, neither the act of making mortgage payments or performing repairs on a house are sufficient to convey an ownership interest in a house. In Louisiana, a transfer of immovable property must be in the form of an authentic act or act under private signature, or meet the requirements for an oral transfer. La. C.C. art. 1839; *Harp v. Succession of Bryan*, 19-0062 (La. App. 1st Cir. 9/3/20), 313 So.3d 284, 293.

In this case, Mr. Robles presented no written document purporting to transfer partial ownership of the house to him in accordance with La. C.C. art. 1839. Nor has Mr. Robles established the possibility of an oral transfer of the house. In order for an oral transfer of immovable property to be valid between the parties, there must be delivery of the property and an acknowledgement by the transferor, under oath, of the transfer. La. C.C. art. 1839. During Ms. Dennies' testimony, far from acknowledging an oral transfer of a partial ownership interest in the house to Mr. Robles, she denied ever discussing purchasing the house jointly. Given the lack of any supporting evidence, Mr. Robles failed to establish the existence of a colorable

5

dispute concerning ownership of or any semblance of an ownership interest in the house. An eviction proceeding does not become a title dispute over which a city court lacks jurisdiction merely because the defendant asserts, without any supporting evidence, an ownership interest in the property. See *Tartan Transport & Construction., Ltd. v. McDonald*, 436 So.2d 1270, 1271 (La. App.1st Cir.), writ denied, 442 So.2d 446 (La. 1983); *Moody Investment Corporation v. Occupants of 901 E. 70th St.*, 43,396 (La. App. 2d Cir. 8/13/08), 990 So.2d 119, 123.

In his *pro se* brief, Mr. Robles appears to argue the trial court also lacked subject matter jurisdiction to hear Ms. Dennies' rule for possession because he had filed a petition for a protective order against Ms. Dennies in the 21st JDC and it had not been heard at the time Ms. Dennies' rule for possession was heard.[2] Essentially, he argues the trial court lacked jurisdiction to hear the rule for possession because his request for a protective order should take precedence over all other matters, including Ms. Dennies' rule for possession. This argument lacks merit.

Subject matter jurisdiction refers to the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. *Bon Amis Investments, Inc.*, 195 So.3d at 517. Louisiana Code of Civil Procedure article 4844(C) specifically grants the City Court of Hammond jurisdiction over suits for possession of leased premises in cases where the lease is by the month and the monthly rent does not exceed $5,000. See also La. C.C.P. art. 4843(F). Thus, Ms. Dennies' rule for possession fell within the jurisdiction of the trial court because the lease between the parties was by the month and the rent was $500 per month. The fact that Mr. Robles may have filed a petition for a protective

---

[2] In brief, Mr. Robles alleges the 21st JDC issued an *ex parte* temporary restraining order on October 21, 2022, and scheduled a hearing for November 11, 2022, on his request for a protective order based on Ms. Dennies allegedly conspiring to murder him. He further indicated the 21st JDC denied his request for sole possession of the house on the grounds that Ms. Dennies owned the house and Mr. Robles had a separate address.

order against Ms. Dennies in the 21st JDC did not divest the trial court of its subject matter jurisdiction over Ms. Dennies' rule for possession.

Finally, Mr. Robles alleges the trial court committed manifest error in granting Ms. Dennies' rule for possession in view of: the audio recording he played in court wherein Ms. Dennies agreed he could remain in the house until the end of the year; the perjury she committed when she denied making such an agreement; and Ms. Dennies' failure to prove stalking and invasion of privacy as grounds for evicting him.

It is well-settled that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless they are clearly wrong. If the factual findings are reasonable and supported by the record, the trial court's determinations must be given much discretion, especially regarding the credibility of witness testimony. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Id.* Where there is conflicting testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Thus, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. *Id.*

Initially, we note that while much of Mr. Robles' argument is based on the audio recording he played in court in which Ms. Dennies allegedly agreed to allow him to remain in the house until the end of the year, he failed to introduce either the recording or a transcript thereof into the record. Appellate courts are courts of record and may not review evidence that is not in the appellate record. La. C.C.P. art. 2164; *Denoux v. Vessel Management Services, Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 88. Moreover, even if Ms. Dennies did agree Mr. Robles could remain in the

7

house until the end of the year during the conversation recorded on October 12, thereby negating the October 11 notice to vacate, the trial court accepted her testimony that she gave Mr. Dennies a second notice to vacate after the October 12 conversation occurred.

Mr. Robles strenuously argues the trial court erred in accepting Ms. Dennies' testimony because she perjured herself regarding the October 12 conversation. It is impossible for this court to determine the accuracy of this claim since the record does not establish the content of this conversation. We note, however, that the trial court, which heard both the audio recording and Ms. Dennies' testimony, did not make a finding that her testimony was inconsistent with the audio recording. To the contrary, in ruling in her favor, it is apparent the trial court accepted Ms. Dennies' testimony. Considering the record before us and the great deference accorded to a trial court's credibility evaluations, we cannot say the trial court manifestly erred in accepting Ms. Dennies' testimony.

In view of its credibility evaluations, we find no manifest error in the trial court's factual findings that the parties had a verbal month-to-month lease, and Ms. Dennies gave Mr. Robles written notice to vacate the premises more than five days before the end of the month based on invasions of her privacy. Given Ms. Dennies' testimony regarding the agreement between the parties and the written notices to vacate she gave Mr. Robles, the record supports the trial court's findings.

## CONCLUSION

For the above reasons, the judgment of the trial court granting Ms. Dennies' rule for possession and ordering Mr. Robles to vacate the premises is affirmed. All costs of this appeal are assessed to Mr. Robles.

**AFFIRMED.**